| | |
|---|---|
| DINSMORE & SHOHL LLP<br>Sara A. Johnston, Esq.<br>100 West Main Street, Suite 900<br>Lexington, Kentucky 40507<br>(859) 425-1000<br>(Admitted pro hac vice 1/17/2025)<br><br>SEYFARTH SHAW LLP<br>Owen Wolfe, Esq.<br>620 Eight Avenue<br>New York, New York 10018-1405<br>(212) 218-3389<br>*Attorneys for Merchants Bank of Indiana* | Hearing Date: April 1, 2025, 10:00 a.m. EST<br>Objection Deadline: March 25, 2025 |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                                              :
                                                                                           :          **Chapter 11**
19 W 55 LLC                                                                :          **Bankruptcy Case No. 24-45220(NHL)**
                                                                                           :
                    **Debtor.**                                           :
-------------------------------------------------------------x

### MOTION OF MERCHANTS BANK OF INDIANA (I) TO DISMISS DEBTOR'S BANKRUPTCY CASE FOR CAUSE PURSUANT TO 11 U.S.C. § 1112 OR, IN THE ALTERNATIVE, (II) TO GRANT RELIEF FROM THE AUTOMATIC STAY

1.      Merchants Bank of Indiana ("**Merchants**"), the all asset secured lender and holder of the majority of claims against 19 W 55 LLC (the "**Debtor**"), through its undersigned counsel, respectfully submits this Motion (the "**Motion**") requesting the Court enter an order (i) dismissing this chapter 11 case for cause pursuant to 11 U.S.C. § 1112(b), or in the alternative, (ii) granting Merchants, its agents, assigns, and successors in interest, (a) relief from the automatic stay for cause as set forth herein pursuant to 11 U.S.C. § 362(d) to permit Merchants to pursue its state law remedies against real property owned by Debtor, and located at 19 West 55th Street in New York, NY 10019 ("**Property**") which is subject to mortgages granted in favor of Merchants and to (b)

order that Merchants is entitled to prospective relief from the automatic stay in any future case filed by the Debtor.

2.      In support of this Motion, Merchants relies upon its Proof of Claim No. 4 along with its incorporated addendum and exhibits. [Proof of Claim No. 4] (the "**Merchants Claim**"). The Merchants Claim is also filed herein, along with its addendum and its exhibits, as **Exhibit "1"**.

## PRELIMINARY STATEMENT

3.      This case was filed as a further attempt to deprive Merchants the benefit of the bargain to which the Debtor agreed and is in essence, a two-party dispute against a non-operating, cashless, single asset, employee-less Debtor.

4.      As the Debtor readily admits in its filing, the Bankruptcy Case was filed to "prevent [Merchants Bank] from selling the Property…" at the foreclosure sale scheduled to take place on January 15, 2025. [DN 3, ¶ 21]. Based on its Schedules, the Debtor is unable to file a confirmable Plan.

5.      Aside from the filing's thwarting purpose, insurmountable feasibility issues, and improbable plan confirmation, cause further exists to dismiss the case because the Debtor does not appear to be operating. [*Compare* DN1-1, Schedule A/B: Assets, Part 1, 3: $69.93 in the operating account *with* DN 1-1, Statement of Financial Affairs, Part 1: 01/01/223 to 12/31/2023 revenue of $633.04]. And if Debtor were operating, it is doing so at a significant loss, while failing to provide adequate protection of Merchants' security interests against the depreciation of the Property prior to confirmation of a plan. Merchants has been paying for the Property's insurance since September 2023 in the aggregate amount of at least $465,059.48, including two post-petition insurance payments totaling $43,830.82. [The Merchants Claim, Addendum, at ¶ 12]. Merchants has paid

real estate taxes beginning April 2023 in the aggregate amount of $899,172.33. [The Merchants Claim, Addendum, at ¶ 13].

6.  As it stands, the Debtor is unable to pay any administrative expenses. Notably, Debtor has not sought consent or court authority to use Merchants' cash collateral. Nor can Debtor carry its burden to show that Merchants' interests are adequately protected, and that Debtor's use of cash collateral will not reduce the value of the Merchants' interest in the property.

7.  The Debtor is currently unable to pay interest to Merchants pursuant to 11 U.S.C. § 362(d).

8.  The Debtor only has one asset, no employees, and unsecured creditors have claims which are dwarfed by even the Scheduled amount of Merchants' claim.[1]

9.  The circumstances here demonstrate that the Bankruptcy Case does not serve a permissible purpose. The case should be dismissed for cause and lack of good faith, to allow Merchants to pursue its state court remedies against the Debtor and non-debtor Guarantor.

10. As is clearly evident, the Debtor's prospects for emerging from this case are bleak if not non-existent. And, it should be of no surprise that because of the several indicia of "cause" which are individually and collectively present in this case, Merchants is alternatively seeking relief from the automatic stay afforded the Debtor in this case. In addition, and/or in the alternative, it is indisputable that there is no equity in the collateral based on Merchants' claim as of the Petition Date of not less than $53,241,327.91 and the Debtor's Scheduled value of $19,000,000.00. Finally, the Debtor has shown no reasonable likelihood of a timely reorganization. Thus, Merchants is entitled to relief from the automatic stay pursuant to 11 U.S.C. 362(d)(1) and (2), which would allow Merchants to reschedule the sale of the Property.

---

[1] Merchants' claim is significantly higher than the scheduled amount and thus, the actual percentage Merchants holds is likely much larger.

11. To make matters worse, and after over two months, the Debtor has failed to file a DIP Motion, despite indications in its initial papers that a DIP Motion would be forthcoming, and despite representations at its Initial Case Management Hearing that a DIP Motion would be filed to be heard on Tuesday. As of the date of this filing, the undersigned is unaware of proposed terms or any other details regarding the proposed financing.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and, solely for purposes of this Motion, venue is proper pursuant to 28 U.S.C. § 1409. This Motion is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

13. This Motion is requested pursuant to 11 U.S.C. § 1112.

## FACTUAL BACKGROUND

14. On December 13, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

15. Since the Petition Date, the Debtor has continued its possession of the property and has continued to operate and manage its business, as a debtor in possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

16. The Debtor filed its Statement of Financial Affairs and Schedules (collectively, "**Schedules**") with its bankruptcy petition [DN 1]. The Debtor's Schedules state that the value of the Property is $19,000,000, while the debt owed to Merchants is in excess of $49,000,000. [DN 1-1, Official Form 204]. The Schedules also state that the Debtor had less than $70.00 in its possession when it filed its petition. [DN 1-1, Schedule A/B, Part 1].

17. The Debtor did not file any "first day" motions or other substantive pleading since the filing of the case. The Debtor's proposed counsel has not filed an application to be retained as Debtor's counsel nor has the Debtor filed its Corporate Disclosure Statement.

18. The Debtor's gross revenue for the calendar year of 2023 was less than $650.00, with no information provided on 2024 revenue or the year-to-date 2025 revenue.

19. Because the Debtor has not generated any income, the escrow was depleted and Merchants had to pay whatever was necessary to protect the value of the Property and its rights in the Property, including insurance, certain real estate taxes, utilities, and various repairs. [DN 1-1, Official Form 207].

20. Merchants holds 100% of the scheduled secured claims and, at least 60% of the scheduled total unsecured claims.[2,] [*Compare* DN 1-1, Schedule E/F, Part 4: $19,688,919.08 Total Unsecured Claims *with* DN 1-1, Schedule D, Part 1, 2.1: Scheduling Merchants' Unsecured portion as $30,471,639.38].

21. On December 16, 2024, David Goldwasser, identified as Vice President of Restructuring of the Debtor, filed an Affidavit Pursuant to Local Bankruptcy Rule 1007-4 [DN 3] ("Affidavit"). The Affidavit stated the following relevant facts: (i) the bankruptcy case was filed to halt the foreclosure of Merchants (¶¶ 9 and 21); (ii) the Debtor was in possession of a $26 million dollar offer of debtor-in-possession financing from 364 Capital, LLC and would immediately apply for approval of said financing (¶ 11); and (iii) the Debtor intended to hire a real estate broker to assist it with the Property (¶ 10). The terms of Mr. Goldwasser's retention with

---

[2] This amount includes the $17,750,442.30 that is owed to TLG 19 W 55 LLC, which potential insider relation has not yet been investigated. Thus, this percentage is subject to change. Further, certain of these amounts owed to vendors were likely required to be paid by the additional principal funded with the Loans.

the Debtor are not disclosed in the Schedules or in the Affidavit and the parent corporation's authorization of the bankruptcy filing is also not disclosed.

22. In the two plus months since the filing of the Affidavit, the Debtor has filed nothing with the Court to seek approval of DIP financing or the retention of a real estate broker. Merchants similarly has no knowledge of the terms of this proposed DIP financing. Because the Debtor has no funds and generates no revenue through operations, Merchants continues to fund all necessary expenses like utilities, insurance, and repairs. [The Merchants Claim, Addendum, at ¶ 8].

23. No request has been made for the use of Merchants' cash. [*Id.* ¶ 3].

24. No proposal has been made for adequate protection to Merchants. [*Id.* ¶ 4].

25. No request has been made for the appointment of a trustee or examiner.

26. An Official Committee of Unsecured Creditors has not been formed.

27. The initial 341 Meeting has not been conducted.

**The Merchants Loans**

28. The Debtor owns certain commercial real property located in New York County, commonly known as 19 W. 55th Street, New York, New York 10019. [DN 1-1 at pp. 10 of 39].

29. Merchants is the holder and owner of the first priority secured loan ("**Loan**" or "**Loans**") and together with the Note, Mortgage, and related documents, including any amendments and modifications, the "**Loan Documents**") in the principal amount of $36,760,000.00 secured by the Property. [The Merchants Claim at Exhibit B to the Addendum, at internal Exhibits L- U].

30. In connection with the Loans, the Debtor executed and delivered to Merchants related Loan Documents wherein the Debtor granted to Merchants, among other things, security interests in substantially all of the Debtor's assets, including, but not limited to, a mortgage and

assignment of leases and rents (collectively, the "**Collateral**") as further described in Merchants' proof of claim. [*See generally,* Claim No. 4].

31. The Collateral further includes, but is not limited to, "cash collateral" as that term is defined in Section 363(a) of the Bankruptcy Code (collectively, the "**Cash Collateral**") and the Property. [*See* Claim No. 4].

32. The Loans are also subject to a Continuing Guaranty dated on or about December 30, 2019 (the "Guaranty") executed by Abraham Liefer (the "**Guarantor**"). [See **Exhibit 2**, and also incorporated into the Merchants Claim at Exhibit B to the Addendum].[3]

33. Prior to the Petition Date, and following Debtor's defaults, Merchants, Debtor, and Guarantor executed a Forbearance Agreement on or about March 30, 2021, a Second Forbearance Agreement on or about September 30, 2021, and a Third Forbearance Agreement on January 18, 2022 (collectively, the "**Forbearance Agreements**"). [See **Exhibit 3**, and also incorporated into the Merchants Claim at Exhibit B to the Addendum].

34. Debtor was and continues to be in default under the terms of the Loan Documents and the Forbearance Agreements. These events of default from March 30, 2021 to present include, but are not limited to: the Debtor's and Guarantor's failure to make the October 2020 installment payment, to pay insurance and real estate tax escrow payments to Merchants, to pay ad valorem taxes when due, and to pay the Loan in full at the original maturity date and then at the maturity date as extended by the Forbearance Agreements. [See *id.*].

35. In each Forbearance Agreement, the Debtor and Guarantor agreed to waive the automatic stay provided to a debtor in bankruptcy pursuant to 11 U.S.C. § 362(a). [See ¶ 24 of

---

[3] In connection with the Loan, Debtor also granted Merchants an Assignment of Leases and Rents which is of record in the office of the City Register of the City of New York as File No. 2020000017831. [See Exhibit _ to The Merchants Claim].

each Forbearance Agreement at Exhibit 3, and also incorporated into the Merchants Claim at Exhibit B to the Addendum].

### The Foreclosure Action

36. Due to these defaults, Merchants filed the Civil Action to enforce its agreements with Debtor and Guarantor and to foreclose on the Property on March 15, 2023. [See Exhibit A to the Merchants Claim (the "Complaint")].

37. On or after the filing of the Civil Action, the Debtor stopped paying for insurance, utilities, and other necessary expenses for the Property. [Merchants Claim, Addendum at ¶ 10].

38. Merchants has force placed insurance on the Property and has been paying these necessary expenses since at least September 2023. [Merchants Claim, Addendum at ¶ 10]. Merchants' payment of these items is authorized to be added to the balance of the Loan pursuant to the Loan Documents. [*Id.*].

39. On or about July 12, 2024, the Supreme Court of the County of New York granted Merchants' motion for summary judgment and entered the Judgment that among other things, (i) found the Debtor owed Merchants the sum of $49,430,972.88 plus pre-judgment and post-judgment interest, certain expenses and attorneys' fees, and protective advances made to preserve and protect the Property, and (ii) directed the court appointed Referee to sell the Property at auction at the New York County Courthouse following proper notice. [See Exhibit C to the Merchants Claim (the "Judgment and Order of Sale")].

40. The Referee had scheduled the auction of the Property for January 15, 2025. Before this could occur, the Debtor filed its petition for relief herein on December 13, 2024. [See Exhibit 4, the "**Notice of Sale**").

41. Interest has accrued and continues to accrue on the Loans at the contract rate of $9,064.11 per day, or $276,455.355 per month, and Merchants continues to accrue attorneys' fees and costs related thereto. [Merchants Claim, Addendum at ¶ 17].

## ARGUMENT

42. First and foremost, "cause" exists in several forms, such that Merchants is entitled to dismissal pursuant to 11 U.S.C. 1112(b), including but not limited to, each and every factor outlined by the Second Circuit in *C-TC, infra*. Alternatively, "cause" exists to grant Merchants stay relief under Section 362(d)(1), including, but not limited to, lack of adequate protection of Merchants' interests in the Property and Cash Collateral. Additionally, Merchants is entitled to relief from the automatic stay under Section 362(d)(2) because there is no equity in the Collateral and Cash Collateral, and the prospects of reorganization by the Debtor, even under the Debtor's yet-to-materialize "immediate" financing representation, are at best highly unlikely to result in a confirmable plan and at worst, impossible. Therefore, for the reasons more fully stated below, Merchants is entitled to dismissal, and alternatively, relief from the automatic stay.

    **A.    The Bankruptcy Case Should Be Dismissed for Cause**

43. Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court *shall* convert . . . or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." Although the Bankruptcy Code does not define "cause," section 1112(b)(4) provides a non-exclusive list of factors that may constitute "cause" for dismissal, including: (i) substantial and continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (ii) gross mismanagement of the estate; (iii) failure to maintain appropriate insurance that poses a risk to the estate of the public; (iv) unauthorized use of cash collateral substantially harmful to 1 or more

creditors; and (v) failure to timely pay taxes owed after the date or the order for relief. 11 U.S.C. 1112(b)(4)(A), (B), (C), (D), (F), (I).

44. Additionally, "cause" affords the Court broad discretion under Section 1112(b) to determine if additional facts not otherwise set forth in 1112(b)(4) constitute cause for dismissal, including the Debtor's "lack of good faith" in filing the petition. *See e.g., In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997).

45. As the Movant, Merchants initially carries the burden of proof on establishing cause to dismiss based on bad faith. The burden of proof on a motion seeking dismissal for "cause" is a shifting one. As movant, Merchants has the initial burden. *See, e.g. Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999). But, when a debtor's good faith is questioned, the burden shifts to the debtor to establish its good faith in filing the case. *Clear Blue Water, LLC v. Oyster Bay Mgmt. Co.,* 476 B.R. 60, 68 (E.D.N.Y. 2012). To dismiss a case for a bad faith filing, a court will review the totality of the circumstances to determine if "the debtor has abused the 'provision, purpose or spirit' of the Bankruptcy Code and whether the filing is 'fundamentally fair' to creditors." *In re Armstrong*, 409 B.R. 629, 634 (Bankr. E.D.N.Y. 2009).

46. In the Second Circuit, courts will find a petition was filed in bad faith in a myriad of circumstances, but especially "if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *In re AAGS Holdings, LLC*, 608 B.R. 373, 382-83 (Bankr. S.D.N.Y. 2019) (quoting *Baker v. Latham Sparrowbush Assocs.* (*In re Cohoes Indus. Terminal, Inc.*), 931 F.2d 222, 227 (2d Cir. 1991)).

47. The Second Circuit has determined that the following eight factors are as "badges" of bad faith, **all** of which apply to this case:

10

(1) **the debtor has only one asset**;

(2) **the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors**;

(3) **the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt**;

(4) **the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action**;

(5) **the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights**;

(6) **the debtor has little or no cash flow**;

(7) **the debtor can't meet current expenses including the payment of personal property and real estate taxes**; and

(8) **the debtor has no employees**.

*C-TC,* 113 F.3d at 1311 (emphasis added for each factor).

48. This case is a textbook bad faith filing. Every single one of these factors are present:

(1) The Debtor's sole asset is the Property;

(2) The amount owed to Merchants dwarfs the amounts owed to the other unsecured, non-insider creditors;[4]

(3) The single asset was subject to a pending foreclosure sale;

(4) the filing is a two-party dispute;

(5) the Debtor filed its petition approximately one month before the Property was set for auction pursuant to the judgment in the Civil Action after over a year of litigation;

(6), (7), (8) The Debtor has no employees, no cash flow, and cannot pay expenses related to the Property like utilities and insurance.

---

[4] Certain of the non-insider creditors may be amounts that were required to be paid by Merchants' additional extension of principal and thus, Merchants reserves its rights as to the same.

The Debtor's lack of activity after the petition was filed also suggests this was a bad faith filing. In over two months, the Debtor has not applied to retain its proposed counsel, has not filed a motion to secure debtor in possession financing, has not applied to retain a broker, and has not filed any other substantive pleading.

49. The undisputed facts and the Debtor's own Schedules prove that this case was filed in bad faith. The Debtor has admitted that the value of its only asset is far less than the amount owed to Merchants which is secured by a mortgage on the Property. The Debtor has admitted it filed the petition only to halt the foreclosure sale. The Debtor has admitted it has no income, employees, or operations. Merchants is paying for the Property's insurance, utilities, and required maintenance. The Debtor has no prospect of reorganizing its business or selling the Property that would result in a recovery for any unsecured creditor. This case should be dismissed for cause pursuant to 11 U.S.C. § 1112(b), as it was filed in bad faith with no prospect of reorganization. In the alternative, Merchants is entitled to immediate relief from the automatic stay.

### B. Merchants Is Entitled to Relief from the Automatic Stay

50. Section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [Section 362(a) of the Bankruptcy Code]…
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under [Section 362(a) of the Bankruptcy Code], if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization…

11 U.S.C. § 362.

51. Pursuant to 11 U.S.C. § 362(d)(1), Merchants is entitled to relief from the automatic stay with respect to the Property, as the Debtor is not and cannot provide "adequate protection" of Merchants' interest in the Property. Merchants is currently paying certain necessary expenses for the Property as the Property generates no income and the Debtor has no other assets or sources of income. Further, the Debtor acknowledges there is no equity in the Property such that the Debtor could try to argue any adequate protection via equity cushion.

52. Turning to 11 U.S.C. § 362(d)(2), the Debtor admits it has no equity in the Property under subsection (d)(2)(A). The issue, then, is whether the Property is "necessary to an effective reorganization" under subsection (d)(2)(B). That issue turns on whether there is a realistic likelihood of a plan of reorganization within a reasonable period of time. The leading case on the point is the Supreme Court's decision in *United Savings v. Timbers of Inwood Forest*, 484 U.S. 365 (1988), where the Supreme Court articulated the test under subsection (B) of section 362(b)((2) that: "there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" As stated in *Timbers*:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*.

*Id.* at 375-76 (emphasis in original). *See also In re Kent Terminal Corp.*, 166 Bankr. 555, 562 (Bankr. S.D.N.Y. 1994) ("Under the standards outlined in *Timbers* and its progeny, [Debtor] must show that the Property is essential to an effective reorganization that is not only feasible but in prospect.").

53. Since the filing of this case the Debtor has not taken any meaningful steps towards a successful reorganization and the property continues to depreciate on an expedited basis given

the Debtor's inability to pay for repairs, taxes, or insurance. There is no evidence in the record of the likelihood of any feasible plan of reorganization within any reasonable time period.

54. The Second Circuit identified a number of factors to consider when a court must decide whether or not to modify the automatic stay to permit the resumption of litigation in another court. In *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990), the Second Circuit stated the following factors should be examined when a motion for stay relief was under consideration:

> (1)   whether relief would result in a partial or complete resolution of the issues;
> (2)   lack of any connection with or interference with the bankruptcy case;
> (3)   whether the other proceeding involves the debtor as a fiduciary;
> (4)   whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5)   whether the debtor's insurer has assumed full responsibility for defending it;
> (6)   whether the action primarily involves third parties;
> (7)   whether litigation in another forum would prejudice the interests of other creditors;
> (8)   whether the judgment claim arising from the other action is subject to equitable subordination;
> (9)   whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10)  the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11)  whether the parties are ready for trial in the other proceeding; and
> (12)  impact of the stay on the parties and the balance of harms.

*In re Sonnax*, 907 F.2d at 1286. "Not every one of these factors will be relevant in every case." *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002).

55. In this case, the relevant *Sonnax* factors (identified by number below) indicate that Merchants is entitled to relief from the automatic stay with respect to the Property:

> 1. Relief from the stay to permit the sale of the Property in the Civil Action would partially resolve the issues between Merchants and the Debtor through a

        reduction in debt, but would also resolve this bankruptcy case through dismissal or conversion to chapter 7;

        4.     The Court in the Civil Action has jurisdiction to resolve all matters related to the Property and the claims of Merchants against the Debtor and Guarantor;

        6.     Merchants' enforcement of its rights under the Loan Documents only involves the claims of Merchants against the Debtor and Guarantor;

        7.     Foreclosure on the Property will not prejudice other creditors of the Debtor, as their claims are either unsecured or are subordinate to the interests of Merchants in the Property;

        8.     Merchants' claim is not subject to equitable subordination and has been reduced to a final judgment in the Civil Action;

        9.     Merchants' success in the Civil Action would not result in its liens becoming avoidable by the Debtor;

        10.    Merchants' claims against the Property and the Debtor have been reduced to judgment in the Civil Action, which is a final and non-appealable judgment; and

        12.    Leaving the stay in place harms Merchants, as it must continue paying for the Property's necessary expenses, including casualty insurance, when the value of the Property is less than the amount of its current debt.

56.     With the automatic stay in place, Merchants must pay the necessary expenses for the Property to protect the collateral for its debt from loss; however, the Debtor has stated that the value of the Property is tens of millions of dollars less than the debt owed to Merchants and that it has no ability to pay for these expenses through operations. The Debtor has provided no evidence that it can reorganize or that it is ready to present DIP financing to the Court. This case is a stalling tactic at the continued expense of Merchants.

57.     As stated in Paragraph 24 of its three forbearance agreements with Merchants, the Debtor and Guarantor have waived their rights to object or to contest a motion for stay relief from

Merchants. ). [See ¶ 24 of each Forbearance Agreements at Exhibit __, as incorporated into the Merchants Claim at Exhibit B to the Addendum].

58.     Given the lack of adequate protection of Merchants' interest in the Property and the Debtor's lack of equity in the Property and lack of ability to operate or to reorganize, Merchants is entitled to stay relief pursuant to 11 U.S.C. § 362(d)(1) and (d)(2).

### C. Prospective Relief from the Automatic Stay Is Warranted in any Future Case Affecting the Property

59.     Because the Debtor has demonstrated a willingness to abuse the Bankruptcy Code by filing this case in bad faith, and because the Debtor has used the bankruptcy process to delay and frustrate the legitimate efforts of Merchants to enforce its rights, prospective relief is warranted in this case. *See, e.g.*, *In re Hartford & York LLC*, No. 13-45563-ess, 2014 Bankr. LEXIS 997, at *22-23 (Bankr. E.D.N.Y. Mar. 13, 2014).

60.     In *Hartford & York*, a single asset real estate case, Judge Stong applied the *C-TC 9th Avenue* factors and held that the case should be dismissed as a bad faith filing where, among other things, the debtor's primary asset was the real estate, 98% of the claims were attributable to the secured lender seeking dismissal, the property was the subject of a pending mortgage foreclosure action, this was a two-party dispute between the debtor and secured creditors which could be resolved in the foreclosure action, the debtor filed for chapter 11 relief just prior to a scheduled foreclosure sale, and debtor had no employees, no cash flow, and could not pay expenses related to the property. *Hartford & York LLC*, 2014 Bankr. LEXIS 997, at *11-17.

61.     Relying on Section 105(a) of the Bankruptcy Code, Judge Stong further held that because of the debtor's bad faith, any bankruptcy case filed by the debtor in the 120 days following

dismissal would not trigger a stay unless, after notice and a hearing, the court determined that the latter case was filed in good faith. *Id.* at *22-23.

62. Here, as in *Hartford & York*, the Court should grant prospective relief from stay in any future cases affecting the Property based on the Debtor's bad faith filing of this case.

## CONCLUSION

Based on the foregoing, Merchants respectfully requests the entry of an order: (A) dismissing the bankruptcy case for cause pursuant to 11 U.S.C. § 1112, or, (B) in the alternative, granting Merchants, its agents, assigns and successors in interest relief from the automatic stay with respect to the Property pursuant to 11 U.S.C. § 362(d) to permit the enforcement of its rights in the Civil Action, and (C) pursuant to 11 U.S.C. § 105(a), providing that if the Debtor files a bankruptcy case in the 120 days following the dismissal of this case, the automatic stay shall not come into effect upon the filing of the latter case unless, after notice and a hearing, the Court determines that the latter case is filed in good faith as to the creditors to be stayed.

Dated: February 24, 2025                                Respectfully Submitted,

                                                        **DINSMORE & SHOHL LLP**

                                                By:     /s/ Sara A. Johnston
                                                        Sara A. Johnston
                                                        100 West Main Street, Suite 900
                                                        Lexington, Kentucky 40507
                                                        Telephone (859) 425-1000
                                                        Email: sara.johnston@dinsmore.com

                                                        *Attorney for Merchants Bank of Indiana*